IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE


PRESTON L. CAMPBELL )
)
v. ) NO. 3:05-0766
) JUDGE CAMPBELL
BASS PRO OUTDOOR WORLD, LLC )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 23). For the reasons stated herein, Defendant's Motion is GRANTED, and this action is DISMISSED.

FACTS

Plaintiff Preston L. Campbell, an African-American male, has sued his former employer, Defendant Bass Pro Outdoor World, for racial discrimination in violation of 42 U.S.C. § 2000e, *et seq.*, commonly known as "Title VII." Plaintiff alleges that he was subjected to a racially hostile work environment[1] and that he was fired because of his race and in retaliation for his complaints of racial discrimination.

Plaintiff was hired by Defendant on November 20, 2000, as Loss Prevention Manager of Defendant's Nashville, Tennessee store. Docket No. 35, ¶ 9. One of Plaintiff's primary responsibilities as Loss Prevention Manager was to insure that the store where he was employed was in compliance with the regulations of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and

---

[1] Although Plaintiff's Complaint alleges a racially hostile work environment, neither party has addressed that issue on this Motion and Plaintiff has not offered any affirmative proof thereof. Therefore, the Court finds that claim to have been abandoned.

with state and local firearms laws. Id., ¶ 18. One of the means by which Plaintiff, as Loss Prevention Manager, insured that Defendant complied with ATF regulations was through the auditing process, which was solely a responsibility of the Loss Prevention Department. Id., ¶¶ 19-20.

It is the responsibility of the Loss Prevention Manager to insure that all firearms are properly acquired and that the acquisition information is correctly entered into the store records and government forms. Id, ¶¶ 28 and 48. Defendant also places responsibility on the Loss Prevention Manager to insure that any mistakes on the federally-required firearms applications called Form 4473s are properly corrected and that all Form 4473s on file at Defendant's store are 100% accurate and complete. Id., ¶¶ 29 and 36.

In addition, Defendant expects the Loss Prevention Manager to make sure that any firearm shown as "returned" on the daily records is physically in the store and has been correctly reacquired in the store's records. Id, ¶¶ 40 and 54. In other words, Defendant places the responsibility for insuring that every firearm is accounted for and secured on the Loss Prevention Manager. Id., ¶ 55.

One of the ways in which the Loss Prevention Manager assures that all firearms are properly accounted for and secured is the performance of a monthly gun audit. Id., ¶¶ 56-57. If any firearm is found to be missing, the Loss Prevention Manager is to immediately report the missing firearm to the store manager and to the Director of Loss Prevention and then conduct an immediate search for the firearm. Id, ¶¶ 64-65 and 69. Responsibility for locating and securing the missing firearm is placed solely on the Loss Prevention Manager. Id., ¶¶ 66 and 107.

After a monthly gun audit, the Loss Prevention Manager prepares a monthly loss prevention report, called the Manager Audit, and provides it to the Director of Loss Prevention. Id, ¶ 73. In

his March 26, 2004 Manager Audit, Plaintiff certified that (1) all Form 4473s were complete and accurate 100% and (2) all firearms were accounted for. Id., ¶¶ 75-76. In addition, as part of his Loss Prevention Month End Report of March 2004, Plaintiff certified to Defendant that all firearms were accounted for and all Form 44732 were completed 100%. Id., ¶ 79. Despite those certifications, when Plaintiff conducted the March 26, 2004 monthly gun audit, he discovered there were two firearms not accounted for. Id., ¶ 92.

Defendant also conducts regular corporate gun audits of each store. Id., ¶ 81. Such a corporate gun audit was performed at the Nashville store in April of 2004. Id., ¶¶ 86-87. The auditor found problems with the Form 4473s and also found that two firearms were unaccounted for. Id., ¶¶ 90-91. Plaintiff did not tell the auditor that the two firearms were unaccounted for. Id., ¶ 94. Plaintiff admitted that he made no effort to try to determine what was happening with the missing firearms from March 26, 2004, until he learned of the corporate gun audit. Id., ¶ 113.

Following the April 2004 corporate gun audit, Plaintiff met with Kevin Darnell, his Regional Loss Prevention Manager, to discuss the results of the April 2004 audit. Id., ¶ 110. In that meeting, Plaintiff prepared and signed a handwritten statement, dated May 6, 2004, which stated, among other things: "In light of what transpired as stated above, I have discussed this with Kevin Darnell, and I feel appropriate disciplinary action would be a written repremand (sic), and should this occur in the future that termination of my position with the Company is very possibly indicated." Id, ¶¶ 111 and 117.

In July of 2004, Defendant conducted a store audit of the Nashville store, in which the internal auditor noted numerous problems with regard to ATF gun controls. Id., ¶¶ 139 and 141. Another corporate gun audit was performed at the Nashville store in November of 2004. Id., ¶ 146.

3

That audit noted numerous problems with the Form 4473s prepared during the ninety days prior to the audit. Id., ¶ 149. In his monthly loss prevention reports for the three previous month, Plaintiff certified on each report that all Form 4473s were complete and accurate 100%. Id., ¶ 150. Plaintiff admitted that when he discovered repeated problems with the Form 4473s during August, September and October 2004, it was his responsibility to report those problems to the store manager or the Director of Loss Prevention. Id., ¶ 156.

Defendant contends that the November 2004 audit demonstrated that Plaintiff was continuing to make the same errors he had made on the earlier audits and that Plaintiff could not maintain compliance with federal, state and local firearms laws. Id, ¶¶ 158-159.

Plaintiff contends he was terminated from his employment with Defendant in November of 2004 in retaliation for his complaints of racial discrimination and because of his ethnicity. Docket No. 1, ¶ 9. Plaintiff alleges that Defendant's asserted reason for the termination – poor performance based upon the firearms audits – was entirely pretextual. Docket No. 1, ¶ 9.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

RACE DISCRIMINATION

In order to establish a case of race discrimination in violation of Title VII, Plaintiff must show: (1) that he was in a protected class; (2) that he was qualified for the position; (3) that despite these qualifications, he was subjected to an adverse employment decision; and (4) that similarly situated non-protected employees were treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Tally v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

If the Plaintiff is able to establish these four elements,[2] then the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its action. McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817, 1824 (1973). The Defendant's burden is one of production only. Cross v. CCL Custom Mfg., Inc., 951 F.Supp. 124, 125 (W.D. Tenn. 1997). A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable. Id. Here, the Court finds that Defendant has stated a legitimate, nondiscriminatory reason --- poor performance as evidenced by various audits --- for its decision to terminate Plaintiff's employment.

---

[2] In light of the Court's findings below, the Court assumes, for purposes of this Motion only, that Plaintiff can establish a *prima facie* case of racial discrimination.

5

If Defendant meets this burden of articulation, then the burden shifts back to the Plaintiff to prove by a preponderance of the evidence that the reason proffered by the Defendant was not its true reason but merely a pretext for discrimination. McDonnell Douglas, 93 S. Ct. at 1824. Pretext may be shown either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994). Plaintiff may demonstrate that the Defendants' explanation was merely pretext by showing that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the termination; or (3) the proffered reason was not sufficient to motivate the discharge. Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000).

Even if the Plaintiff proves that Defendant's proffered reason is pretext, Plaintiff still bears the ultimate burden of proving that a discriminatory intent motivated the Defendant's actions. St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2751-52 (1993). Throughout the case, the Plaintiff's burden is one of both production and persuasion. Cross, 951 F. Supp. at 125. It is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination. Noble, 391 F.3d at 728 (citing Hicks).

An employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir. 1982); Murphy v. Centerior Energy Corp., 1994 WL 573914 at \*\* 6 (6th Cir. Oct. 17, 1994). The aim of the Court is not to review bad business decisions or question the soundness of the employer's judgment. Id.

6

The Sixth Circuit has adopted an "honest belief" rule that protects employers against a finding of pretext when they have a reasonable basis for taking the adverse employment action at issue. Mulvin v. City of Sandusky, 320 F.Supp. 2d 627, 636 (N.D. Ohio 2004) (citing Smith v. Chrysler Corp., 155 F.3d 799 (6th Cir. 1998)). As long as the employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001). The "honest belief" doctrine protects employers when they base their decision on "particularized facts" and make an informed and reasonable decision based on those facts. Mulvin, 320 F.Supp. 2d at 637.

In order to determine whether Defendant had an "honest belief" in the proffered basis for the adverse employment action, the Court looks to whether the employer can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir. 2001). The Court does not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather the key inquiry is whether the employer made a reasonably informed and considered decision before taking the action. Id. If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual. Id.

As indicated above, Plaintiff does not dispute the facts upon which Defendant relied in terminating his employment. Plaintiff has admitted that he failed to report and then locate missing firearms. Plaintiff has admitted that he falsely certified that the store's Form 4473s were complete

7

and 100% accurate. Plaintiff has admitted he was warned in May of 2004 that continued failures like these could warrant termination.

The Court finds that Defendant, upon receiving additional audit reports in November of 2004 which indicated Plaintiff's continued false reporting and failures to account for missing firearms, acted reasonably and with an "honest belief" in firing Plaintiff. Defendant honestly and reasonably believed that Plaintiff was continuing to make the same errors he had made on the earlier audits and that Plaintiff could not maintain compliance with federal, state and local firearms laws. Even if Defendant's ultimate conclusions were incorrect, which the Court specifically does not find, Defendant's honest belief protects it as set forth above. Contrary to Plaintiff's assertions, the Court need not determine credibility of witnesses in order to make this ruling.

Thus, even assuming Plaintiff has established a *prima facie* case of racial discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for its action, and Plaintiff has failed to show that that reason was pretextual. In other words, Plaintiff has failed to show that the true reason for his firing was race.

The Court finds that Plaintiff has failed to identify a genuine issue of material fact as to whether Defendant's legitimate, nondiscriminatory reason was actually a pretext for racial discrimination and the true reason for Defendant's action was race. Defendant's Motion for Summary Judgment on Plaintiff's racial discrimination claim is GRANTED, and that claim is dismissed.

## RETALIATION

To establish a claim for retaliation under Title VII, Plaintiff must establish: (1) he engaged in protected conduct, (2) the exercise of his civil rights was known to Defendant, (3) Defendant

8

thereafter took an employment action adverse to Plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 464 (6th Cir. 2001).

Similarly, even assuming Plaintiff can establish a *prima facie* case of retaliation, Defendant has articulated a legitimate, nondiscriminatory reason for its action, and Plaintiff has failed to show that that reason was pretextual. As explained above, Defendant's honest belief concerning Plaintiff's continued failures was reasonable. Plaintiff has failed to show that the true reason for Defendant's action was Plaintiff's protected conduct.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 23) is GRANTED, and this action is DISMISSED. The trial set for December 19, 2006, and the pretrial conference set for December 11, 2006, are canceled.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE